[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated August 14, 1998 the plaintiff, Marion G. James commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown and other relief. The defendant appeared through counsel. Both parties appeared with counsel commencing January 31, 2000 and concluding September 21, 2000 with twelve days of testimony and the introduction of hundreds of exhibits. The court, after hearing the testimony and reviewing the exhibits and briefs filed by counsel, makes the following findings of fact.
The plaintiff, whose maiden name was Marion G. Dontje, married the defendant on February 21, 1992 in Chicago, Illinois. She has resided continuously in the State of Connecticut for at least twelve months preceding the filing of the complaint. All statutory stays have expired. The parties have one (1) child issue of the marriage: Amanda E. James CT Page 3953 born January 3, 1994. No other minor children have been born to the plaintiff since the date of the marriage. The court further finds that neither party or their child have been the recipients of any aid from the State of Connecticut or any municipality thereof.
The plaintiff is forty-four years of age and is in good health. She resides in a single family residence with the parties minor daughter. She acquired the residence during the pendency of this action from her own funds. Although her post high school education was in the nursing field she has been in the banking field for over twenty years. She presently is a senior vice president at Fleet Boston Bank and the majority of her banking career has been with Fleet Boston or one of its predecessors.
The defendant is forty-eight years of age. Physically he is in good health but his emotional stability is suspect. He presently resides in a condominium which he rents and in which he has his business, New England Stock Photo. He received his bachelor's degree from Indiana and a masters degree in business administration from DePaul. The majority of his adult working career has been in the real estate field.
The plaintiff began her banking career in Hartford, Connecticut with Connecticut National Bank which became Shawmut Bank. She became a officer of the bank and her salary increased over the years to $70,000. She became eligible for a pension and participated in a 401K plan. In early 1990 she moved to Chicago, Illinois and became employed by Continental Bank at a salary of $80,000 per year. In August of 1990 she met the defendant and they began an intimate relationship that culminated in their marriage in February of 1992. When she went with Continental the plaintiff rolled her Shawmut 401K plan into Continental's 401K plan. Prior to the marriage the defendant owned real property at 116 West Burton Place, Chicago Illinois and for a period of time the parties lived there. The defendant was employed with Inland Real Estate as vice-president and earned an annual salary of $60,000. In 1991, prior to their marriage the parties purchased a home in Burr Ridge, Illinois which was subsequently sold. West Burton Place is still owned by the defendant and currently on the market for sale. Based upon a review of the testimony and exhibits the court finds the fair market value of this property to be $600,000.
Both prior to and during the early years of their marriage the defendant engaged in several improper financial transactions. He prepared a lease agreement using the plaintiffs' maiden name in order to secure financing even though the plaintiff was not a tenant of the property in question. He further forged her name to lines of credit checks and credit cards. After the parties married the defendant lost interest in the intimate part of the marriage. He disliked his job and became CT Page 3954 despondent. He sought to buy a business and spent several thousands of dollars in doing so without success. The plaintiff mentioned divorce. Amanda's maternal grandmother lived in Connecticut. After discussing the matter with the defendant the plaintiff and Amanda moved to Connecticut and the plaintiff became re-employed with Shawmut with a reinstatement of her prior years service. She re-transferred her 401K plan from Continental to Shawmut.
When the plaintiff moved to Connecticut she agreed to speak to Shawmut personnel in an attempt to aid her husband in obtaining employment. Unfortunately and unbeknownst to both parties Shawmut planned to merge with Fleet and the opportunity for the defendants' employment with the bank disappeared. The defendant was bitter even to the extent of making threatening remarks concerning the President of Fleet. The defendant stayed in Chicago until Burr Ridge was sold and moved to Connecticut in February/March of 1995.
The defendant's lack of intimacy continued. The defendant borrowed from various sources the sum of $170,000 to buy the business known as New England Stock Photo. Prior thereto he rejected a job offer. He operated the business out of the marital residence located on Strickland Street in Glastonbury, Connecticut. In 1997 and 1998 he increased the sales of the business. In August of 1998 the plaintiff learned the extent of the defendant's forgeries and commenced this action.
The testimony of the parties was mostly contradictory. The defendant admitted to the forgeries and other questionable financial transactions but denied that the plaintiff mentioned divorce before she moved to Connecticut. He also blames the plaintiff for her lack of support in making New England Stock Photo into a profitable business and he is now left with a large amount of debt. The court finds that the defendant's testimony to a large extent was not creditable. An exhaustive amount of testimony involved the financial transactions of the parties. Claims of pre marital assets and the financial contributions of the parties to the marriage and marital assets was testified to in great detail. In fashioning the orders hereinafter set forth the court has considered all of the conflicting claims of the parties.
During the trial the court expressed concern about the defendant's ability to proceed with the trial and received reassurances the defendant was fully able to proceed. The defendant proffered medical testimony concerning his emotional state and mental condition. The court finds that the defendant was fully capable of understanding the proceedings and engaged in obfuscation and delaying tactics to prolong the trial. The court finds that the defendant caused the breakdown of the marriage.
CT Page 3955
With respect to New England Stock Photo the court reviewed previous orders entered in this case. As early as October 22, 1998 the court (Barall, J.) ordered the defendant to "aggressively attempt to sell the business." The court has reviewed all of the testimony and exhibits relative to the business and finds that the defendant failed to aggressively attempt to sell the business and as a result the debts mounted. Further, the defendant failed to create a legal entity which would have shielded the parties from personal liability.
On April 20, 2000 the court dissolved the marriage reserving financial matters to the trial court.
The court has considered all of the statutory factors concerning custody and visitation set out in Connecticut General Statutes §§ 46b-56
and 46b-56a. The court has further considered all of the factors in Connecticut General Statutes §§ 46b-81, 46b-82 and 46b-62 and other pertinent statutes, earnings and earning capacity differentials, causes for the breakdown of the marriage and the consequences of the financial awards set forth below. It is ordered that:
1. CUSTODY AND PARENTING PLAN:
Legal custody of the minor child, Amanda, is awarded to both parties as set forth in § 46b-56a of the Connecticut General Statutes. The child's primary place of residence shall be with the plaintiff. The defendant's current visitation of alternating weekends shall be continued and that such be monitored in terms of the effects on the child by Dr. Mary Cheyne, the child's therapist. Further, the parties are to submit to the court, based on Dr. Cheyne's recommendations addition parenting time for the defendant during week nights, school vacations and holidays and other important occasions i.e. Mother's Day, Father's Day, etc. Said submission shall be filed with the court within thirty days from the date of this decision.
2. CHILD SUPPORT:
The defendant's obligation to pay child support to the plaintiff is suspended for a period of six months from the date of this decision or the obtaining of employment whichever first occurs. The defendant shall immediately notify the plaintiff of any employment he obtains, either on a full or part-time basis. Child support shall in part be based upon the defendant's income at the time he obtains employment or earning capacity of $60,000, his actual annual earnings prior to his move to Connecticut.
3. HEALTH INSURANCE FOR THE MINOR CHILD:
CT Page 3956
The plaintiff wife shall maintain primary health insurance coverage for the benefit of the minor child so long as the child is eligible as a minor or full-time student and so long as such is provided as an employee benefit through her employment. In the event that there is a cost to the plaintiff for such insurance then the defendant shall pay 50% of such cost commencing with his obligation to pay child support as hereinabove set forth. He shall also pay 50% of all unreimbursed medical, dental, orthodontic, optical, prescriptive and psychological expenses for the minor child commencing with his obligation to pay child support.
4. ALIMONY:
The plaintiff shall pay to the defendant alimony in the amount of $300 per week for a period of three years. Alimony shall terminate sooner upon the death of either party, the remarriage of the defendant, the cohabitation of the defendant or the employment of the defendant on a full-time basis. With the exception of the earlier termination dates set forth herein said alimony shall be nonmodifiable as to term.
The defendant shall pay the plaintiff One Dollar ($1.00) per year alimony, which shall be modifiable only in the event that the defendant fails to fully comply with the obligation to indemnify and hold the plaintiff harmless as to any and all debts which the defendant incurred on behalf of the plaintiff, known or unknown, concerning which the Court hereinafter orders the defendant to hold the plaintiff harmless and indemnify her including the cost associated with any defense which is required to be expended on her behalf relative to such debts.
5. LIFE INSURANCE:
Both parties shall maintain whatever life insurance is available to them at no cost as an employee benefit for the benefit of the minor child. Proof of such insurance shall be provided by each party to the other on an annual basis.
6. PERSONAL PROPERTY:
Each party shall retain the personal property in their possession or under their control.
7. AUTOMOBILES:
The plaintiff shall retain the vehicle she is currently driving. The defendant shall retain and be responsible for both Toyota Camrys.
8. DEFENDANT'S HEALTH INSURANCE:
CT Page 3957
The defendant, if he so elects, shall be entitled to COBRA coverage and the plaintiff shall fully cooperate in assisting the defendant in obtaining such coverage. The cost for such insurance shall be paid for by the defendant.
9. PROPERTY DIVISION:
 a. 11 Lincoln Drive, Glastonbury, Connecticut: The plaintiff shall retain all right, title and interest in and to her real property located at 11 Lincoln Drive, Glastonbury, Connecticut.
 b. 56 Strickland Street, Glastonbury, Connecticut: The balance of the net proceeds from the sale of this property shall be held in escrow by the defendant's attorney and be used to pay the financial obligations of the defendant. Payments from the escrow shall first be made to creditors who have or may assert a claim against the plaintiff and any balance shall be applied to the defendant's creditors in the order agreed to by the defendant and his counsel.
 c. 166 West Burton Place, Chicago, Illinois: The defendant shall retain all right, title and interest in and to his real property located at 166 Burton Place, Chicago, Illinois.
 d. New England Stock Photo: The defendant shall have 100% right, title and interest in and to the business known and New England Stock Photo, be responsible for all liabilities in connection therewith and shall indemnify and hold the plaintiff harmless from the payment of such liabilities.
 e. Bank Accounts: Each of the parties shall retain all of the bank accounts listed on their respective financial affidavits. To the extent the defendant has any open accounts in the names of the parties he shall take immediate steps to close the accounts.
 f. Stocks, Bonds and Mutual Funds: The plaintiff shall retain her Fleet Financial Group, Inc. stock options.
CT Page 3958
 g. IRA, 401K, Profit Sharing and Pension Plans: The defendant shall retain his Schwab IRA account and his CIGNA 401K account. The plaintiff shall retain her Fleet 401k and Fleet Pension.
 h. Attorneys Fees: Each of the parties shall be responsible for their remaining unpaid attorneys fees.
 i. Debts: Each of the parties shall be liable and hold the other harmless from the liabilities listed on their respective financial affidavits.
 j. Setoff: In the event that the plaintiff is required to make payment of any of the liabilities for which the defendant is liable, then to such extent she can setoff such payments against any remaining obligation to make alimony payments.
BY THE COURT
JOHN R. CARUSO, J.